**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

Steven Castleberry, (B-59415),⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀Petitioner,⠀⠀⠀)⠀⠀⠀⠀Case No. 21 C 2247
⠀⠀⠀⠀⠀⠀v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
Justin Wilks, Warden,⠀⠀⠀⠀⠀⠀)⠀⠀⠀⠀Hon. Jeremy C. Daniel
Dixon Correctional Center,⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀Respondent.⠀⠀)

## MEMORANDUM OPINION AND ORDER

Petitioner Steven Castleberry, an Illinois prisoner proceeding *pro se*, petitions this Court for federal habeas relief under 28 U.S.C. § 2254. He challenges his convictions and sentences on two counts of aggravated criminal sexual assault from the Cook County Circuit Court. Respondent has answered the petition, and Petitioner has replied. For the reasons below, the Court denies the petition and declines to issue a certificate of appealability.

## I. BACKGROUND

The background facts quoted below are from the state appellate court in Petitioner's first direct appeal, which well sets out the facts of the case. *See People v. Castleberry*, 2013 IL App (1st) 111791-U, rev'd, 43 N.E.3d 932 (Ill. 2015);[1] *see also Hartsfield v. Dorethy*, 949 F.3d 307, 309 n.1 (7th Cir. 2020) (when addressing a § 2254 petition, federal courts often "take the facts from the Illinois Appellate Court's opinions") (citing 28 U.S.C. § 2254(e)(1)). The facts of the case are as follows:

> At trial, C.A. testified that she met defendant in June 2009 at the barbershop where he worked at East 79th Street and South Michigan Avenue. The two exchanged phone numbers and arranged a meeting on June 21, 2009. C.A. testified that it was Father's Day, and she went to pick up defendant at his home in the

---

[1] Although the Illinois Supreme Court reversed the state appellate court's decision on a sentencing issue not before this Court, Petitioner "d[id] not challenge the appellate court's affirmance of his convictions," or the appellate court's description of the facts supporting the convictions. *People v. Castleberry*, 43 N.E.3d 932, 935 (Ill. 2015).

evening. She drove defendant to a liquor store and waited in the car while defendant went in and purchased some vodka. Defendant then suggested that they go to a place where he knew people were playing dice. C.A. drove to this location and defendant gambled for approximately an hour and a half. Defendant then suggested they go to the barbershop where he worked so they could hang out.

C.A. first drove to a house where defendant retrieved keys to the barbershop and then to the barbershop. The shop was closed, and no one was there. Defendant unlocked the door and then locked it from the inside after they entered the shop. C.A. testified that she and defendant hung out and talked. Defendant drank his vodka and C.A. smoked cigarettes but did not drink. At around 11:40 p.m., C.A. said it was time for her to go home and she gathered her things. However, defendant pointed a gun at her and told her that she was going to perform oral sex on him.

C.A. testified that defendant held the gun to her head and took her to a sofa and ordered her to take her clothes off. C.A. complied because she was scared and began to perform oral sex after defendant removed his clothing and sat down on the couch. After a period of time, defendant ordered C.A. to stand up and put her hands on the couch and defendant got up and behind C.A. and penetrated her vagina with his penis. Defendant continued to hold the gun and then told C.A. he wanted her to perform oral sex again.

C.A. testified that defendant walked across the barbershop, emptied the bullets from the gun and placed the gun down. He then returned to the couch and demanded C.A. perform oral sex on him again. C.A. again complied and performed oral sex on defendant. Defendant did not ejaculate at any time during the night.

C.A. testified that she was crying throughout this time and told defendant that she needed tissues. She was heading to the bathroom when defendant informed her of a roll of tissue in the room. C.A. informed defendant that she needed to use the restroom, hoping she could escape from a window. Defendant refused to allow her to use the restroom and told C.A. to urinate on the floor. C.A. urinated on the floor next to the couch and gathered more tissue.

C.A. testified that defendant fell asleep on the couch. When she called his name and he did not answer, C.A. got dressed, picked up the gun with a towel and hid it in the back of the barbershop. C.A. retrieved defendant's keys but was unable to unlock the door. When she tried to call the police on her cell phone she realized that the battery was dead. However, she was able to call 9-1-1 on defendant's cell phone and then the barbershop's land line when the police could not determine her location.

A police car soon arrived, but defendant woke up. Defendant grabbed C.A. and attempted to force her into the restroom. C.A. testified that she yelled and fought defendant and tried to be as loud as she could so the police would hear her. After defendant forced C.A. into the bathroom, he asked her why she called the

police. C.A. responded that she called the police because defendant had raped her. Defendant told C.A. to go to the door and tell the police it was a mistake, but when she was outside of the restroom, defendant grabbed C.A. to stop her. At this time, the police officers gained entrance by breaking through a window in the front of the barbershop. C.A. testified that she pulled away and ran and exited through the broken window.

C.A. met up with a police officer and was placed in a squad car. She told the police what had happened and where she hid the gun that defendant used. C.A. was taken to the hospital and a rape kit examination was conducted, but there was insufficient male DNA for analysis. Officer Andrew Scudella of the Chicago police department testified that he responded to the scene and recovered the handgun, wrapped in at towel, from a plastic bin in the barbershop as C.A. told the officers. He testified that the gun was unloaded and he was unable to find any ammunition.

The State also presented other crimes evidence through the testimony of M.S. M.S. testified that she met defendant in February 2009 and went out with defendant on June 15, 2009. Defendant picked her up from work that night and they went to McDonald's and a park and then to the barbershop where defendant worked. The barbershop was closed at the time and the two watched television and M.S. smoked marijuana. M.S. testified that defendant left for approximately 20 minutes and when he returned, M.S. told defendant she was ready to leave.

M.S. testified that defendant agreed and began turning lights off and preparing to leave. However, when he returned from the back of the barbershop, defendant was holding a gun and told M.S. that they were not leaving and to take her clothes off. Defendant forced M.S. to perform oral and vaginal sex on him. Defendant then fell asleep, but M.S. testified that her cell phone battery died and she did not look for a phone or try to get out. Defendant drove M.S. home the next morning. After talking with friends about the incident, one of M. S.'s friends called the police and the police interviewed M.S. and took her to the hospital. On July 27, 2009, M.S. went to the police station and identified defendant in a lineup as the man who sexually assaulted her.

Defendant presented the testimony of Detective Nanette Ansley of the Chicago police department. Ansley testified that she interviewed C.A. on June 22, 2009. C.A. indicated that she had been having phone conversations with defendant in the weeks prior and that she picked up defendant from the barbershop, not his home. Defendant rested.

Following closing arguments, the jury found defendant guilty of both counts of aggravated criminal sexual assault. Defendant filed a *pro se* motion for a new trial, alleging that he suffered ineffective assistance of trial counsel. Following testimony by defendant, defense counsel and two others, the circuit court denied the motion.

> At sentencing, … [t]he State sought a sentence beyond the minimum, which it argued was 6 years' imprisonment, plus 15 years' for the firearm enhancement for each conviction, for a total minimum sentence of 42 years' imprisonment. The court opined that case law only allowed application of the enhancement to one count and defendant was sentenced to consecutive sentences of 9 and 24 years' imprisonment for the aggravated criminal sexual assault convictions, including the single 15-year enhancement for use of a firearm in the commission of the crime.

*Castleberry*, 2013 IL App (1st) 111791-U, ¶¶ 12-24.

## B. Petitioner's Direct Appeals:

Petitioner appealed and argued: (1) the trial court erred by not striking three potential jurors for cause, and (2) the 15-year enhancement for using a firearm during the offense was improper since a prior state appellate court decision declared the enhancement unconstitutional under the Proportionate Penalties Clause of the Illinois Constitution. *Id.* at ¶¶ 27 and 34 (citing *People v. Hampton*, 406 Ill. App. 3d 925, 942 (Ill. App. Ct. 2010)). With respect to the biased-jurors issue, the appellate court determined that the one juror who was not struck and who served on the petit jury indicated he was not biased during *voir dire*, and that the trial court did not abuse its discretion in denying Petitioner's request to strike him. *Id.* at ¶¶ 29-33.

With respect to the sentencing issue, the appellate court determined not only that the 15-year firearm enhancement was constitutional under Illinois law, but also that the trial court should have enhanced the sentence for each of Petitioner's two sexual-assault conviction counts (one for oral sex; the other for vaginal sex). *Id.* at ¶¶ 35-38. The appellate court concluded that the sentence was void, and that "[t]he proper remedy … [wa]s to remand the matter to the trial court for a new sentencing hearing." *Id.* at ¶ 38.

Addressing Petitioner's petition for leave to appeal (PLA), the Illinois Supreme Court held that the appellate court had no authority to rule on the State's requests to void the sentence and to remand for resentencing. *Castleberry*, 43 N.E.3d at 940-41. Instead, the State had to seek

mandamus relief to compel the trial court judge to increase the sentence. *Id.* The State subsequently sought from the state supreme court a writ of mandamus against the trial judge. Granting the writ, the state supreme court held that "two convictions based on two separate acts of sexual penetration while armed with a firearm warrant the imposition of two separate sentence enhancements, one for each offense," and "order[ed] the respondent judge to vacate his sentencing order and resentence Castleberry." *People ex rel. Alvarez v. Gaughan*, 72 N.E.3d 276, 288 (Ill. 2016).

In 2017, the trial court resentenced Petitioner to two terms of 9 years' imprisonment for his two sexual assault convictions and added 15 years to each term based on his use of a firearm during the offenses. *See People v. Castleberry*, No. 1-17-1716 (Ill. App. Ct. 2019); (Dkt. 9-4) (copy of appellate court's unpublished decision). Petitioner appealed. This time, however, his appellate attorney filed a motion to withdraw, asserting there were no issues of arguable merit. *Id.* at ¶ 7; *see also Anders v. California*, 386 U.S. 738, 744 (1967) (an attorney appointed for an appeal, upon determining that the appeal has no arguable merit, may move the appellate court to withdraw, so long as the motion is "accompanied by a brief referring to anything in the record that might arguably support the appeal," and the defendant has an opportunity to respond).

Petitioner's response to appellate counsel's motion asserted that his trial attorney was ineffective for failing to argue the sentencing enhancements constituted both a double-jeopardy violation, as well as a violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), because the jury was not asked to determine the factual basis of the enhancements. *Id.* at ¶ 8.; *see also Apprendi*, 530 U.S. at 490 ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."). The state appellate court, agreeing with the attorney that no issues of arguable merit existed, granted her motion to withdraw and affirmed the convictions and sentence.

(Dkt. 9-4, ¶¶ 9-11.) Petitioner filed a *pro se* PLA, (Dkt. 9-5), which the Illinois Supreme Court denied. *State v. Castleberry*, 154 N.E.3d 748 (Ill. 2020).

### C. Petitioner's Post-Conviction Proceedings:

In 2015, while the above-described state court proceedings were pending, Petitioner filed a post-conviction petition in the state trial court. (Dkt. 9-11.) He asserted the following:

(1) counsel on direct appeal was ineffective for not arguing:

    (a) trial court error with not giving a jury instruction about consent; and

    (b) trial counsel's ineffectiveness for: (i) not seeking suppression of the gun as evidence; (ii) not calling the State's evidence technician to testify at trial that he found no gun, nor any bullets, at the crime scene; and (iii) not objecting to the trial court's failure to comply with Ill. S. Ct. Rule 431(b) (jurors must be informed about a defendant's right not to testify and the presumption of innocence that the State must overcome with evidence of guilt beyond a reasonable doubt);

(2) the Illinois statute allowing for the introduction of other crimes evidence, 725 ILCS 5/115-7.3, is unconstitutional;

(3) the Illinois statute requiring the imposition of a mandatory supervised release term, 730 ILCS 5/5-8-1(d)(1), is unconstitutional.

(Dkt. 9-11, pg. 7-23.)

The state trial court dismissed the post-conviction petition at the first stage of review upon determining that the petition was frivolous and/or patently without merit. (Dkt. 9-12.) Petitioner appealed. Again, his appointed attorney filed a motion to withdraw with a brief stating no issues of arguable merit existed, which the appellate court granted. (Dkt. 9-8.); *Pennsylvania v. Finley*, 481 U.S. 551 (1987) (applying the *Anders* approach to post-conviction appeals). Petitioner filed a *pro se* PLA, (Dkt. 9-9), which the Illinois Supreme Court denied. *People v. Castleberry*, 98 N.E.3d 40 (Ill. 2018).

**D. Petitioner's First Federal Habeas Case:**

In 2019, while his PLA was still pending in the state supreme court, Petitioner filed a § 2254 federal habeas petition in this Court. *See Castleberry v. Varga*, No. 19 C 3565 (N.D. Ill.). Because state proceedings were still pending, this Court dismissed the § 2254 petition without prejudice to him refiling it after state proceedings concluded. *Id.* at Dkt. Entry 31. In 2021, after state proceedings ended, Petitioner filed a new § 2254 petition, which initiated the current case.

## II. DISCUSSION

Petitioner's current § 2254 petition lists six claims for relief. (Dkt. 1, pg. 5-7.) Several of the claims include allegations of ineffective assistance of trial counsel with respect to the underlying issue, i.e., one claim asserts that the trial court erroneously allowed a biased individual to be a juror, and also that trial counsel was ineffective for not raising the issue in a motion for new trial. *Id.* Respondent, grouping Petitioner's ineffective assistance of trial counsel allegations together into a separate claim, lists seven claims. (Dkt. 8, pg. 5-6.) Petitioner's reply states no objection to Respondent's listing of Petitioner's claims, and his reply follows Respondent's format. (Dkt. 17.) This Court will thus use Respondent's organization of claims, which deprives Petitioner of none of his arguments, but simply organizes them differently. His § 2254 claims are:

(1) the trial court erroneously refused to strike "an admittedly biased prospective juror for cause;"

(2) the trial court's imposition of a 15-year enhancements to Petitioner's two aggravated sexual-assault conviction counts was improper because: (a) a state appellate court previously determined the enhancement violated the proportionate-penalty clause of the Illinois Constitution; and (b) the basis for the enhancements—use of a gun during a sex offense—was already an element of the aggravated criminal sexual assault offense, and considering the gun again for sentencing resulted in double-counting and double-jeopardy violations;

(3) the automatic imposition of a mandatory supervised release (MSR) term to Petitioner's sentence violated the separation of powers doctrine;

(4) the state law allowing the introduction of other-crimes evidence at trial is unconstitutional as it permitted jurors to find Petitioner guilty based on an improper determination he had the propensity to commit the charged offenses;

(5) the 15-year enhancements to his sentence were unconstitutional because the add-ons required factual findings that had to be presented to the jury in accordance with *Apprendi*, 530 U.S. at 490;

(6) trial counsel was ineffective for failing to: (a) preserve the biased-juror claim by omitting it from the post-trial motion for new trial; (b) argue the automatic imposition of a MSR term violated separation of powers concerns; (c) argue the admission of other-crimes evidence was unconstitutional; and (d) argue the 15-year sentencing enhancements for using a gun violated *Apprendi*; and

(7) counsel on direct appeal was ineffective for not arguing: (a) trial counsel's ineffectiveness for not preserving the biased-juror issue; (b) the trial court failed to give a jury instruction on consent; (c) trial counsel's ineffective assistance for not filing or following through with the motion to suppress the gun; (d) trial counsel's ineffectiveness for not objecting to the trial court's failure to comply with Ill. S. Ct. Rule 431; (e) the automatic imposition of an MSR term violated Illinois' separation-of-powers doctrine; (f) the admission of other-crimes evidence was unconstitutional; (g) the firearm sentencing enhancements violated *Apprendi*; and (h) trial counsel was ineffective for not calling an expert to testify about no fingerprints found on the gun.

(Dkt. 1, pg. 5-7; Dkt. 8, pg. 5-6; Dkt. 17.)

Respondent argues that: Claims 2 and 3 do not raise federal constitutional issues and are thus non-cognizable in a federal habeas case; Claims 1, 6, and 7(a), (e)-(h) are procedurally defaulted because Petitioner did not fully and fairly exhaust state-court review for these claims; and Claims 4, 5, and 7(b)-(d) are without merit. Apart from Claim 2(b), which may assert a cognizable (albeit meritless) constitutional double-jeopardy issue, Respondent is correct.

## A. Non-Cognizable Claims:

Federal courts can entertain habeas petitions by a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." § 2254(a). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

**(1) Claim 2(a)—whether the 15-year firearm enhancement violates the Illinois Constitution's proportionate-penalties clause**

Petitioner argues that, prior to him being sentenced, an Illinois appellate court had determined that the 15-year firearm enhancement to a sexual assault conviction violated the proportionate-penalties provision of the Illinois Constitution. (Dkt. 1, pg. 5; Dkt. 17, pg. 7-8) (citing *People v. Hampton*, 842 N.E.2d 1124, 1138 (Ill. App. Ct. 2005), vacated in part, 867 N.E.2d 957 (Ill. 2007)).[2] Petitioner initially labeled this claim as a federal constitutional issue, (Dkt. 1, pg. 5), but his reply to Respondent's answer acknowledges the claim relates only to the Illinois Constitution's proportionate-penalties clause, and not to federal law. (Dkt. 17, pg. 7-8.)

Whether Petitioner's sentencing enhancements violated Illinois' proportionate-penalties clause is an issue of state law. *Hughes v. Pfister*, No. 17 C 2171, 2019 WL 3825500, at *5 (N.D. Ill. Aug. 15, 2019) (a similar § 2254 claim about a sentencing enhancement violating Illinois' proportionate penalties clause involved only state law); *U.S. ex rel. Keller v. McCann*, 553 F. Supp. 2d 1002, 1012 (N.D. Ill. 2008) (same). Because Claim 2(a) raises no federal issue, it is not reviewable by this Court, and thus, is denied.

**(2) Claim 2(b)—Petitioner's sentencing-enhancement double-counting and double jeopardy claims**

Petitioner's Claim 2(b) argues that his sexual assault "crime [wa]s aggravated to a class X offense based on the firearm, and an additional 15 years [wa]s added to the class X sentence based on the same firearm." (Dkt. 1, pg. 5.) He asserts such sentencing was "unconstitutional in violation

---

[2] The Illinois Appellate Court in *Hampton* determined that "[s]ince the elements of aggravated criminal sexual assault while armed with a firearm and armed violence predicated on criminal sexual assault with a category I weapon are identical, 'common sense and sound logic would seemingly dictate that their penalties be identical.'" *Hampton*, 842 N.E.2d at 1138 (quoted case omitted). Accordingly, stated the appellate court, "the 15–year mandatory add-on provision of section 12–14(d)(1) … violates the proportionate penalties clause." *Id.* The state appellate court in Petitioner's direct appeal explained that the Illinois "legislature … eliminated the proportionate penalties issue for aggravated criminal sexual assault as a predicate offense for armed violence by … removing that offense from the statute." *Castleberry*, 2013 IL App (1st) 111791-U, ¶ 36.

of the double jeopardy clause." *Id.* Respondent contends, despite Petitioner's phrasing, that his argument raises a state-law double-enhancement claim. (Dkt. 8, pg. 6-7.) Construed either way, the claim warrants no federal habeas relief.

Illinois' rule against double counting and the third protection of the federal Constitution's Double Jeopardy Clause are very similar. The Fifth Amendment's Double Jeopardy Clause states: "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. "The Clause affords three protections to the criminal defendant. The first two, which are the most familiar, protect against a second prosecution for the same offense after acquittal, and … after conviction." *Jones v. Thomas*, 491 U.S. 376, 380-81 (1989). The third protects a defendant "against 'multiple punishments for the same offense' imposed in a single proceeding." *McCloud v. Deppisch*, 409 F.3d 869, 873 (7th Cir. 2005) (quoting *Jones*, 491 U.S. at 381). This protection "prohibits the judicial branch from imposing multiple punishments in situations in which the legislature did not intend them." *United States v. Handford*, 39 F.3d 731, 735 (7th Cir. 1994); *see also Jones*, 491 U.S. at 381. The Double Jeopardy Clause, however, "does not preclude the imposition of multiple punishments for the same offense, so long as the legislature has authorized cumulative punishment." *McCloud*, 409 F.3d at 873.

Illinois' rule against double counting "occurs when a single factor is used 'both as an element of a defendant's crime *and* as an aggravating factor justifying the imposition of a harsher sentence than might otherwise have been imposed.'" *People v. Moss*, 795 N.E.2d 208, 226 (Ill. 2003) (quoting *People v. Gonzalez*, 600 N.E.2d 1189, 1191 (Ill. 1992) (emphasis in both originals). "Generally, a factor implicit in the offense for which the defendant has been convicted cannot be used," by a court, "as an aggravating factor in sentencing for that offense, absent a clear legislative intent to accomplish that result." *People v. Ferguson*, 547 N.E.2d 429, 433 (Ill. 1989).

Both the Double Jeopardy Clause and Illinois' rule against double counting involve statutory interpretation and a determination of legislative intent. "[A]lthough a double jeopardy claim based on multiple punishments presents a federal question, it is one that turns on the intent of the [state] legislature." *Steinhardt v. Cooper*, No. 18 C1410, 2020 WL 5570981, at *4 (E.D. Wis. Sept. 17, 2020); *see also People v. Guevara*, 837 N.E.2d 901, 908 (Ill. 2005) (Illinois' "prohibition against double enhancements is a rule of statutory construction," and "where the legislature clearly intends for there to be a double enhancement, … there is no prohibition.").

Although the analysis for both claims is similar, a double-jeopardy claim involves a federal issue cognizable in a federal habeas proceeding, while an Illinois double counting claim does not. *See Lacy v. Kennedy*, No. 18 C 04603, 2020 WL 4043040, at *4 (N.D. Ill. July 17, 2020) ("double enhancement is non-cognizable on habeas review because it does not relate to federal constitutional issues") (citing *Carter v. Gaetz*, No. 10 C 3857, 2011 WL 759997, at *4 (N.D. Ill. Feb. 24, 2011), and *Alcozer v. Pfister*, No. 11 C 7612, 2014 WL 4947672, at *4 (N.D. Ill. Oct. 1, 2014)). To the extent Petitioner's Claim 2(b) asserts an Illinois double-counting claim, this Court cannot review it. To the extent the claim asserts a constitutional double-jeopardy violation, which is how he presented it in his § 2254 petition and several state court pleadings, (Dkt. 1, pg. 5; Dkt. 9-4, pg. 3; Dkt. 9-5, pg. 11), the Court will address it in the Merits section of this opinion.

**(3) Claim 3—Petitioner's challenge to his MSR term.**

Petitioner's Claim Three—that the automatic imposition of an MSR term to his sentence violates the Constitution's Separation-of-Powers Clause—involves only the application of state law. Even though Petitioner phrases his challenge to Illinois' MSR statute, 730 ILCS 5/5-8-1(d)(4), as a violation of the federal Constitution, as opposed to the Illinois Constitution, "claims involving separation of powers of the state government are not cognizable in a federal habeas proceeding."

11

*Swinson v. Hompe*, No. 09 C 411, 2009 WL 1118477, at *1 (E.D. Wis. Apr. 27, 2009). The Supreme Court "has held that the concept of separation of powers embodied in the United States Constitution is not mandatory in state governments." *Sweezy v. State of N.H. by Wyman*, 354 U.S. 234, 255 (1957); *see also Keller*, 553 F. Supp. 2d at 1012 (a § 2254 petitioner's similar challenge to Illinois' MSR laws invoked only a state-law claim not cognizable for federal habeas review).

Petitioner appears to concede in his reply brief that this claim is not a federal one. (Dkt. 17, pg. 9) ("Ground 3 = Petitioner argues the mandatory MSR violates separation of powers principle. Petitioner refuses to cause undue delay to the Court and respectfully concedes to the claim/issue."). This claim is denied as not cognizable for federal habeas review.

**B.  Procedurally Defaulted Claims:**

A state prisoner, prior to seeking federal habeas relief, must "exhaust[ ] the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). The prisoner must "give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts," which is accomplished "by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also Coleman v. Thompson*, 501 U.S. 722, 732 (1991) (state courts must have "an opportunity to address [constitutional challenges to a state conviction] in the first instance").

If a state prisoner failed to present his constitutional claim fully and fairly at each level of state court review, and he is now unable to obtain such review, his § 2254 claim is procedurally defaulted. *Thomas v. Williams*, 822 F.3d 378, 384 (7th Cir. 2016). Federal habeas review is available for such a claim only if the petitioner "demonstrates either (1) 'cause for the default and actual prejudice' or (2) 'that failure to consider the claims will result in a fundamental miscarriage of justice.'" *Id.* at 386 (quoting *Coleman*, 501 U.S. at 750).

"[C]ause is defined as, 'an objective factor, external to the defense, that impeded the defendant's efforts to raise the claim in an earlier proceeding. … Prejudice means, 'an error which so infected the entire trial that the resulting conviction violates due process.'" *Smith v. McKee*, 598 F.3d 374, 382 (7th Cir 2010). Establishing a fundamental miscarriage of justice requires a showing of actual innocence with new evidence, i.e., "that no reasonable juror would have convicted [the petitioner] in the light of … 'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'" *Thomas*, 822 F.3d at 387 (quoting *House v. Bell*, 547 U.S. 518, 537 (2006)).

**(1) Claim 1—Petitioner's biased juror claim**

With respect to Claim 1—that the trial court refused to excuse a potential juror for cause based on the juror's comment that he considered sexual assault to be an "active crime against my wife"—Petitioner raised this claim in the state appellate court in his first appeal, but not in his subsequently-filed PLA to the state supreme court. Although the PLA is not in the record before this Court, Petitioner acknowledges that the claim "was raised by appellate counsel on direct appeal, but not by the same appellate attorney in Petitioner's petition for leave to appeal to the Illinois Supreme Court." (Dkt. 17, pg. 10); *see also Castleberry*, 43 N.E.3d at 935 (the state supreme court noted that Petitioner's PLA challenged only his sentence and not his conviction). Petitioner contends that his attorney's ineffectiveness with the PLA excuses the default, and that "[f]ederal review is necessary to prevent a fundamental miscarriage of justice." *Id.* He is incorrect.

"Although an error by counsel that amounts to ineffective assistance under the Sixth Amendment may constitute an external factor" to establish cause, *Alvarado v. Pfister*, No. 18 C 488, 2021 WL 1088273, at *4 (N.D. Ill. Mar. 22, 2021) (citing *Crutchfield v. Dennison*, 910 F.3d 968, 973 (7th Cir. 2018)), "there is 'no constitutional right to any assistance of counsel in seeking

discretionary, third-tier review, and shortcomings of counsel at that stage therefore cannot violate the sixth amendment.'" *Id.* at \*4 (citing *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000)); *see also Ross v. Moffitt*, 417 U.S. 600, 610 (1974) (no constitutional requirement exists "to provide ... counsel [for a] discretionary appeal to the State Supreme Court"). Petitioner's claim that the attorney who drafted his PLA on direct review was ineffective does not rise to the level of a Sixth Amendment violation and does not establish cause to excuse the procedural default.

Nor can Petitioner establish that a fundamental miscarriage of justice will result if federal habeas review is refused. As indicated above, this exception requires a showing of actual innocence, a "'demanding' and seldom met" standard. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). He must "persuade[] the district court that, in light of … new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). Petitioner points to no new evidence, and his broad, unsupported assertion that a fundamental miscarriage of justice will result does not satisfy this exception. Claim 1 is thus procedurally defaulted, and Petitioner satisfies neither exception to excuse the default. Federal habeas relief is thus unavailable for this claim.

**(2)  Claim 6—Petitioner's ineffective assistance of trial counsel claims**

Petitioner's § 2254 petition asserts his trial attorney was ineffective for failing to: (a) preserve the biased-juror claim by omitting it from the post-trial motion for new trial; (b) argue the automatic imposition of a MSR term violated separation of powers concerns; (c) argue the admission of other-crimes evidence at trial was unconstitutional; and (d) argue an *Apprendi* violation when the fact that Petitioner used a gun to support the 15-year enhancements was never presented to the jury. (Dkt. 1, pg. 5-7.) Respondent contends none of these claims "were … raised in the state courts and cannot be raised now." (Dkt. 8, pg. 7-8.) While the record before this Court

14

shows that Petitioner raised some of these claims in the state appellate court, the record also shows he did not present his claims in one complete round of state-court review.

Following his resentencing, Petitioner argued to the appellate court that his trial attorney was ineffective for failing to preserve the claim that the 15-year sentencing enhancements violated the Illinois Constitution, the Double Jeopardy Clause, and *Apprendi*. (Dkt. 9-4, pg. 3-4.) His PLA following the appellate court's affirmance, however, asserted no claims of ineffective assistance of trial counsel. (Dkt. 9-5, pg. 19-22.)

In Petitioner's state post-conviction proceedings, he asserted several grounds of ineffective assistance with his appellate attorneys, but he asserted no standalone claims about trial counsel's ineffectiveness. (Dkt. 9-11) (Petitioner's post-conviction petition); (Dkt. 9-8, pg. 2-3) (appellate court's description of his post-conviction claims); (Dkt. 9-9, pg. 10-21) (his post-conviction PLA). Although several of Petitioner's claims of ineffective assistance by appellate counsel were based on that attorney failing to argue ineffective assistance by trial counsel, "an assertion that one's counsel was ineffective for failing to pursue particular constitutional issues is a claim separate and independent of those issues." *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004); *see also McGhee v. Watson*, 900 F.3d 849, 853 (7th Cir. 2018) (a claim of ineffective assistance of appellate counsel for not arguing trial counsel's ineffectiveness is a single claim "separate and independent" from a standalone claim of ineffective assistance by trial counsel); *Howard v. O'Sullivan*, 185 F.3d 721, 725 (7th Cir. 1999) (a constitutional claim presented to the state courts only as part of an ineffective assistance of counsel claim does not satisfy § 2254(b)'s exhaustion requirement for the underlying constitutional claim).[3]

---

[3] This Court recognizes that "the Seventh Circuit has stated that where a constitutional challenge is embedded in an ineffective assistance of counsel claim, the underlying claim may be [considered to have been] fairly presented to the state courts." *Collins v. Atchinson*, No. 12 C 4444, 2014 WL 184720, at *2 (N.D. Ill. Jan. 16, 2014) (citing *McGee v. Bartow*, 593 F.3d 556, 567 n.9 (7th Cir. 2010) (citing *Malone v. Walls*, 538 F.3d 744, 755 (7th Cir.2008)). But even

The ineffective assistance of trial counsel claims asserted in Petitioner's § 2254 petition were not fully and fairly presented at each level of state court review and are thus defaulted. Petitioner makes no showing of cause and prejudice or actual innocence to excuse the default. Federal habeas relief is thus unavailable for these claims.

### (3) Claims 7(a), (e)-(h)—Petitioner's ineffective assistance of appellate counsel claims

Petitioner's § 2254 petition asserts eight grounds of ineffective assistance of appellate counsel. While three of those grounds were exhausted in his post-conviction proceedings (and will be addressed in the next section), the other five were not. Although ineffective assistance of counsel is a single claim, Petitioner must have fully and fairly presented each ground of ineffective assistance to the state courts. *Pole v. Randolph*, 570 F.3d 922, 935 (7th Cir. 2009) ("if a petitioner fails to assert in the state courts a particular factual basis for the claim of ineffective assistance, that particular factual basis may be considered defaulted") (citing *Stevens v. McBride*, 489 F.3d 883, 894 (7th Cir. 2007)).

Petitioner never asserted in state court that his appellate attorney was ineffective for not arguing: (a) trial counsel's ineffectiveness for not preserving the biased-juror issue; (e) the automatic imposition of MSR violated separation of powers concerns; (f) the admission of other-crimes evidence violated Petitioner's right to a fair trial; and (g) his sentencing enhancements

---

if this Court could find that Petitioner fairly presented his claims of ineffective assistance of trial counsel because they were embedded in ineffective-assistance-of-appellate-counsel claims, *see McGhee*, 593 F.3d at 567 n.9, this Court would still not be able to review his § 2254 claims about trial counsel's ineffectiveness. The ineffective assistance of trial counsel claims arguably embedded within the ineffective assistance of appellate counsel claims differ from the claims he asserts here. In his post-conviction PLA, Petitioner argued appellate counsel's ineffectiveness for not asserting on direct appeal that trial counsel was ineffective for failing to: (a) follow through with the motion to suppress the gun as evidence; (b) call an evidence technician as a trial witness; and (c) object to the trial court's failure to comply with Ill. S. Ct. Rule 431. (Dkt. 9-11, pg. 9-17) (Petitioner's post-conviction PLA). His § 2254 claims in this Court argue his trial counsel was ineffective for failing to: (a) preserve the biased-juror claim; (b) argue the automatic imposition of a MSR term violated separation of powers concerns; (c) argue the admission of other-crimes evidence at trial was unconstitutional; and (d) argue an *Apprendi* violation. (Dkt. 1, pg. 5-7.) A state prisoner "cannot argue one theory [of ineffective assistance of counsel] to the state courts and another theory, based on different facts, to the federal court." *Johnson v. Hulett*, 574 F.3d 428, 432 (7th Cir. 2009).

violated *Apprendi* because the fact he used a gun was not presented to the jury. (Dkts. 9-4, 9-5, 9-8, 9-9, 9-11) (Petitioner's direct appeal after resentencing and his post-conviction pleadings).

Petitioner contends that his failure to exhaust state-court remedies for these claims should be excused under the *Martinez/Trevino* exception established from two Supreme Court cases, *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 569 U.S. 413 (2013). In these cases, the Supreme Court recognized that, though there is no constitutional right to counsel in state post-conviction proceedings, ineffectiveness by a post-conviction attorney may serve as cause to excuse the default of an ineffective assistance of trial counsel claim in states that either prevent or discourage such claims from being raised on direct appeal. But "Illinois law gives prisoners a meaningful opportunity to litigate claims of ineffective assistance of trial counsel on direct review[,]" and the Seventh Circuit has thus "decline[d] to extend the *Martinez–Trevino* exception to Illinois prisoners." *Crutchfield v. Dennison*, 910 F.3d 968, 978 (7th Cir. 2018).

Petitioner has not demonstrated either exception to the procedural default of Claims 7(a) and 7(e)-(h). Federal habeas relief is thus unavailable for these claims.

**C. Merits:**

Respondent argues that Claims 4, 5, and 7(b)-(d) are without merit. Respondent is correct. Also without merit is Petitioner's Claim 2(b)'s double-jeopardy claim.

A state prisoner may not obtain federal habeas relief for a claim denied on the merits by a state court unless the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or "was based on an unreasonable determination of the facts." § 2254(d)(1)-(2). "A state-court decision will … be contrary to [Supreme Court] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases … [or] … confronts a set of facts

17

that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [thei]r precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

For a state court decision to be an unreasonable application of clearly established federal law, it must be "objectively unreasonable." *Felton v. Bartow*, 926 F.3d 451, 464 (7th Cir. 2019) (citing *Williams*, 529 U.S. at 411). "'Unreasonable' in [this] context ... means something ... lying well outside the boundaries of permissible differences of opinion." *McGhee v. Dittmann*, 794 F.3d 761, 769 (7th Cir. 2015) (cite omitted). The decision must have been "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). So long as this Court is "satisfied that the [state] court took the constitutional standard seriously and produce[d] an answer within the range of defensible positions," its decision is reasonable. *Felton*, 926 F.3d at 464 (cite omitted).

This highly deferential standard is intentionally difficult to meet. As the Supreme Court has explained: "'States possess primary authority for defining and enforcing … criminal law,' … and for adjudicating 'constitutional challenges to state convictions.'" *Shinn v. Ramirez*, 142 S. Ct. 1718, 1730-31 (2022) (quoted case omitted). "[F]ederal habeas review cannot serve as 'a substitute for ordinary error correction through appeal,'" but instead, "is an 'extraordinary remedy' that guards only against 'extreme malfunctions in the state criminal justice systems.'" *Id.* at 1731 (quoting *Harrington*, 562 U.S. at 102-03).

**(1) Claim 4—the introduction of other-crimes evidence**

Petitioner argues his constitutional right to a fair trial was violated by the introduction of evidence of his prior sex offense pursuant to Illinois law 725 ILCS 5/115-7.3, which allows the admission of other sex-crimes evidence against a defendant charged with a sexual offense. (Dkt.

18

1, pg. 6-7.) "[O]ther crimes evidence," Petitioner asserts "[i]s generally prohibited to show one's propensity to commit the charged crime." *Id.* at 6.

This claim was raised at all three stages of state-court review in Petitioner's post-conviction proceedings. *See* (Dkt. 9-11, pg. 17-19; Dkt. 9-7, pg. 28-29; and Dkt. 9-9, pg. 20-21). The only state court to provide a reasoned decision on the issue, however, is the trial court in its denial of the post-conviction petition. (Dkt. 9-12, pg. 11-13.)

The state trial court concluded this claim lacked merit. *Id.* at 11-13. The court determined that: only the rational-basis test applied; the provision met this standard as it furthered the legitimate state interest "to respond to the problem of recidivism by sex offenders": and "the Illinois Supreme Court has held that 115.7-3 … does not violate due process." *Id.* (citing *People v. Dabbs*, 940 N.E.2d 1088, 1097 (Ill. 2010); *People v. Donoho*, 788 N.E.2d 707, 719 (Ill. 2003)).

The state court's decision was not contrary to, nor involved an unreasonable application of, clearly established federal law. "No Supreme Court case has held that the admission of evidence of other crimes violates a defendant's due process rights even if it is admitted to show the propensity of the defendant to commit crimes." *Payton v. Pfister*, No. 11 C 6610, 2015 WL 5829749, at *13 (N.D. Ill. Oct. 1, 2015). The Supreme Court expressly avoided this issue years ago: "Because we need not reach the issue, we express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime." *Estelle*, 502 U.S. at 75, n.5. The Supreme Court still has not resolved the issue. *See Kipp v. Davis*, 971 F.3d 939, 952, n.8 (9th Cir. 2020) ("there is no clearly established law that addresses whether the admission of a defendant's criminal history or prior bad acts would violate due process"); *Gomes v. Silva*, 958 F.3d 12, 25, n.9 (1st Cir. 2020) (same); *Bennett v. Bartley*, No. 07 C 1975, 2008 WL 4866169, at *4 (N.D. Ill. June 23, 2008) (same).

"Given the lack of holdings from th[e Supreme] Court" on this issue, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (quoting § 2254(d)(1)). Because Petitioner cannot satisfy the requirements of § 2254(d), federal habeas relief is unavailable for this claim, and the claim is denied.

### (2) Claim 5—Petitioner's *Apprendi* challenge

Petitioner's Claim 5 argues that, because the fact he used a gun for his 15-year sentencing enhancements was not presented to the jury, the enhancements violated *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) ("any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt"). This claim was raised in one complete round of state-court review in Petitioner's direct appeal following his resentencing. (Dkt. 9-4, pg. 2); (Dkt. 9-5, pg. 19-21).

Although the claim appears exhausted, no state court provided a reasoned decision on the *Apprendi* issue. The state appellate court noted the claims addressed in appellate counsel's *Anders* brief, including the *Apprendi* claim, and summarily concluded: "After carefully reviewing the record in light of counsel's memorandum and defendant's response, we agree with counsel's conclusion. Thus the motion by the State Appellate Defender for leave to withdraw as counsel is allowed and the judgment of the circuit court is affirmed." (Dkt. 9-4, pg. 4) (*Castleberry*, No. 1-17-1716 at ¶ 9.) Although the state appellate court provided no reasons for its rejection of the *Apprendi* claim, § 2254(d)'s "deferential standard of review 'applies even where there has been a summary denial.'" *Sangathit v. Pfister*, No. 15 C 10336, 2020 WL 1503629, at *7 (N.D. Ill. Mar. 30, 2020) (quoting *Cullen*, 563 U.S. at 187); *see also Harrington*, 562 U.S. at 99 ("[t]here is no merit to the assertion that compliance with § 2254(d) should be excused when state courts issue summary rulings").

The state courts' rejection of Petitioner's *Apprendi* claim was neither contrary to, nor an unreasonable application of, clearly established federal law. *See* § 2254(d). The fact that Petitioner had a firearm when committing his offenses was determined by the jury when they found him guilty of both aggravated criminal sexual assault counts. The jury was instructed that, in order for the State to prove aggravated criminal sexual assault, "the State must prove the following …: First, that the defendant committed an act of sexual penetration …, to wit contact between the defendant's penis and the victim's vagina. Second, the act was committed by the use of force or the threat of force. Third, that the defendant was armed with a firearm." (Dkt. 9-10, pg. 2.) This same instruction was given for the second sexual assault count involving "contact between the defendant's penis and the victim's mouth." *Id.* The jury found Petitioner guilty of both counts, thus finding beyond a reasonable doubt that he was "armed with a firearm" for both offenses. *Id.*

All that *Apprendi* requires is that, if a defendant's enhanced sentence is ""contingent on [a] finding of a fact, that fact … must be found by a jury beyond a reasonable doubt." *United States v. Booker*, 543 U.S. 220, 231 (2005) (quoted case omitted). "*Apprendi* does not require the state to prove facts already found by the guilt phase jury for a second time." *Williams v. Hutchinson*, No. 15 C 457, 2016 WL 6610428, at *9 (S.D. Ill. Nov. 9, 2016) (citing *Mack v. McCann*, 530 F.3d 523, 536-37 (7th Cir. 2008) (*Apprendi* "does not require the State to prove Mack's state of mind twice. Once was enough.")); *see also Burch v. Corcoran*, 273 F.3d 577, 584, n.6 (4th Cir. 2001) ("Burch's sentence of death did not violate *Apprendi* because every fact necessary to the capital murder charges already had been 'submitted to a jury and proved beyond a reasonable doubt.'") (quoting *Apprendi*, 530 U.S. at 490). Accordingly, the state courts' rejection of Petitioner's *Apprendi* claim was neither contrary to, nor an unreasonable application of, clearly established federal law. Claim 5 warrants no federal habeas relief and is denied.

21

**(3) Claims 7(b), (c), (d)—Petitioner's ineffective assistance of appellate counsel claims**

With respect to Claim 7, Petitioner presented the following grounds of ineffective assistance by appellate counsel in one complete round of state court review in his post-conviction proceedings: 7(b) appellate counsel failed to argue error with the trial court's refusal to give a jury instruction on consent; 7(c) appellate counsel failed to argue ineffective assistance by trial counsel for not moving to suppress the gun; and 7(d) appellate counsel failed to argue trial counsel's ineffective assistance for not objecting to the trial court's noncompliance with Illinois Supreme Court Rule 431. (Dkt. 9-11, pg. 7-12, 14-17); (Dkt. 9-12, pg. 4-11); (Dkt. 9-9, pg. 9-20.) Though exhausted, the claims are without merit.

The state post-conviction trial court, which provided the last reasoned decision, correctly stated the standard for claims of ineffective assistance by appellate counsel: "[P]etitioner must show that the failure to raise a particular issue was objectively unreasonable and that his appeal was prejudiced by the omission. … Appellate counsel is not obligated to brief every conceivable issue on appeal, and it is not incompetence of counsel to refrain from raising issues which, in his or her judgment, are without merit, unless counsel's appraisal of the merits is patently wrong." (Dkt. 9-12, pg. 4) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984) (a Sixth Amendment ineffective assistance claim requires proof of both: (1) deficient performance, i.e., objectively unreasonable conduct by counsel; and (2) prejudice, i.e., a reasonable probability of a different outcome but for the deficient performance). "The general *Strickland* standard governs claims of ineffective assistance of appellate counsel, … but with a special gloss when the challenge is aimed at the selection of issues to present on appeal. Appellate counsel is not required to present every non-frivolous claim." *Makiel v. Butler*, 782 F.3d 882, 897 (7th Cir. 2015) (citing *Smith v. Murray*, 477 U.S. 527, 536 (1986)). And neither appellate counsel nor trial counsel can be considered

"ineffective for failing to raise a meritless argument." *Washington v. Boughton*, 884 F.3d 692, 701 (7th Cir. 2018).

### (a) Claim 7(b)—appellate counsel's failure to challenge the absence of a jury instruction on consent

The state post-conviction trial court determined that because Petitioner was not entitled to a jury instruction on consent, he could not establish ineffective assistance by appellate counsel for not arguing trial counsel's ineffectiveness for failing to raise the claim. (Dkt. 9-12, pg. 4-6.) "Here," stated the trial court, "the only evidence in support of petitioner's theory of consent was the circumstantial evidence … that [the] victim drove petitioner to the barbershop, he fell asleep after the encounter, and there were no bodily or vaginal injuries" seen during the hospital examination of the victim *Id.* at 5. But the state court further noted that Petitioner "d[id] not deny that a firearm was present at the scene," and concluded that "[c]onsidering the totality of the record, … any inferences … indicat[ing] consent [we]re too remote to constitute the 'very slight' evidence necessary to require the instruction." *Id.* (quoting *People v. Wheeler*, 558 N.E.2d 758, 763 (Ill. App. Ct. 1990)).

Whether a defendant was entitled to a consent jury instruction is a state-law issue. *See United States v. Ray*, 831 F.3d 431, 434-35 (7th Cir. 2016) (acknowledging that the defense of consent under 720 ILCS 5/11-1.60 is an issue of state law). As previously noted in this opinion, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions," *Estelle*, 502 U.S. at 67-68, and this Court is bound by the state trial court's determination that a consent jury instruction was unwarranted under Illinois law. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."); *see also Powell v. Fuchs*, 4 F.4th 541, 548 (7th Cir. 2021) ("on habeas

review we cannot overturn a state-court's conclusions about state law"). Nor can this Court "fault counsel as ineffective for failing to advance a position under state law that the state … court said was meritless." *Lopez v. Thurmer*, 594 F.3d 584, 587 (7th Cir. 2010). Given the state trial court's conclusion that a consent instruction was unwarranted, to which this Court is bound, its determination of no deficient performance with Petitioner's appellate attorney's failure to argue trial counsel's ineffectiveness with respect to the jury instruction issue was not unreasonable.

The post-conviction trial court further determined that Petitioner could not establish prejudice. According to the state court, if the jury believed the victim was not forced to engage in sexual activity, "it would have necessarily found that the elements of the offense presented were not proven beyond a reasonable doubt." (Dkt. 9-12, pg. 5-6.) Given the instructions the jury received for the sexual assault offenses, which included the requirement that the jury find beyond a reasonable doubt that the sexual act "was committed by the use of force or threat of force," (Dkt. 9-10, pg. 2), the state trial court's conclusion of no prejudice was not unreasonable.

Petitioner cannot prove either prong of his ineffective assistance of appellate counsel claim about the absence of a consent instruction. Federal habeas relief is thus unavailable for this claim.

### (b) Claim 7(c)—appellate counsel's failure to argue trial counsel's ineffectiveness for not seeking suppression of the gun

Petitioner contends his appellate attorney on direct appeal was ineffective for failing to argue trial counsel's ineffectiveness for not filing a motion to suppress the gun. (Dkt. 1, pg. 5.) According to Petitioner, "once [he] exited the barbershop and was placed into custody, no exigency of circumstances existed to justify a warrantless search of the premises." (Dkt. 17, pg. 21.) Supporting this claim, Petitioner submitted to this Court, which it allowed, an affidavit from private investigator Robert Crotty explaining proper police procedures and opining that such procedures were not followed with the retrieval of the gun. (Dkt. 18, pg. 4-5.)

24

The state post-conviction trial court denied this claim upon determining that a motion to suppress would have been futile since the recovery of the gun without a warrant was justified under the emergency-aid exception. *Id.* The state court correctly stated the standard for the exigent-circumstance exception to the Fourth Amendment warrant requirement. "First, the police must have 'reasonable grounds' to believe that there was an emergency at hand … reasonableness … is to be judged objectively in terms of the totality of circumstances known to the officers at the time of entry." (Dkt. 9-12, pg. 7); *see also Mincey v. Arizona*, 437 U.S. 385, 392 (1978) ("the Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid"); *see also Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006) ("One exigency obviating the requirement of a warrant is the need to assist persons who are seriously injured or threatened with such injury.").

When applying this standard to the facts of this case, the state trial court focused on the officers' need to enter the barbershop, including breaking a window to do so, to protect C.A., who was locked inside with the person she had reported raped her:

> Here, the police certainly met the 'reasonable grounds to believe an emergency exists' standard. The police were alerted to a rape by a phone call made by the victim. She was able to call 9-1-1 on petitioner's cell phone and then the barbershop's land line when the police could not determine the location. … C.A. met up with a police officer and was placed in a squad car. She told the police what had happened and where she hid the gun that defendant used. Officer Andrew Scudella … testified that he responded to the scene and removed the handgun … from a plastic bin in the barbershop as C.A. told the officers. … Because of the exigency inherent in this emergency situation, the officers acted reasonably based on the totality of the circumstances known to them at the time. The police had reasonable grounds to believe that an emergency was at hand and their immediate help was necessary.

(Dkt. 9-12, pg. 7-8.) Whether the state trial court addressed Petitioner's specific contention that "[o]nce [he] exited the barbershop and was placed into custody, no exigency of circumstances existed," is unclear. (Dkt. 9-11, pg. 11.)

25

Nevertheless, whether this Court reviews Petitioner's claim under § 2254(d)'s deferential standard or *de novo*, the claim is without merit. *See Harris v. Thompson*, 698 F.3d 609, 623 (7th Cir. 2012) ("AEDPA's deferential standard of review applies only to claims that were actually 'adjudicated on the merits in State court proceedings.' 28 U.S.C. § 2254(d). Where the state courts did not reach a federal constitutional issue, 'the claim is reviewed de novo.'") (quoting *Cone v. Bell*, 556 U.S. 449, 472 (2009).

As stated by the Supreme Court: "the ultimate touchstone of the Fourth Amendment is 'reasonableness' ... An action is 'reasonable' under the Fourth Amendment ... 'as long as the circumstances, viewed objectively, justify [the] action.'" *Brigham City*, 547 U.S. at 403-04 (citations omitted). "[R]ather than employing a *per se* rule of unreasonableness," the Supreme Court has stated that courts should "balance the privacy-related and law enforcement-related concerns to determine if the intrusion was reasonable." *Illinois v. McArthur*, 531 U.S. 326, 331 (2001). "Exigent circumstances exist when there is a reasonable belief by police that their safety, or the safety of the public, may be threatened." *United States v. Webb*, 83 F.3d 913, 916 (7th Cir. 1996) (cite omitted).

Courts have held that, when officers know a gun is at or near a crime scene and might be accessible to the public, its retrieval is reasonable and does not violate the Fourth Amendment. *See United States v. Webb*, 83 F.3d 913, 917 (7th Cir. 1996) (even after the defendant was in custody, the exigent-circumstances exception applied to allow the retrieval of a gun from the trunk of a car, in which officers saw the defendant toss it, the car was accessible to the public, and the keys to the trunk were still in the trunk's lock); *United States v. Taylor*, 179 Fed. Appx. 957, 959-60 (7th Cir. 2006) (warrantless entry was justified where, although suspect was observed leaving the house, officers reasonably believed a gun was within the home and that other people may be in the house);

*see also United States v. Davis*, 710 F. App'x 805, 807 (11th Cir. 2017) (officers could retrieve gun without a warrant where they saw a fleeing suspect throw the gun onto the roof of a house); *Croak v. McGinley*, No. 16-6670, 2017 WL 2125758, at *9 (E.D. Pa. Apr. 24, 2017), report and recommendation adopted, No. 16-6670, 2017 WL 2126319 (E.D. Pa. May 15, 2017) (where a police officer saw through the door window that a known felon "had a gun that he placed in the vicinity of the entryway"; the officer "was also aware of the possibility of another individual in the house"; and the officer's "intrusion into the home was minimal," simply to go "inside the entryway of the house to retrieve the gun," the officer's "extremely modest intrusion … was amply tailored to the exigency he faced").

In the instant case and according to Petitioner's own description of the evidence: "[a]t some point a window was broken and [Officer] Scudella saw the victim exit through the window. Moments later he witnessed the petitioner exit through the same window." (Dkt. 9-11, pg. 11.) "Once the petitioner exited the window … he was placed into custody immediately." *Id.* "Scudella," states Petitioner, then "over heard the victim telling another officer that the petitioner had a gun and that she had both recovered the gun and hid it" while Petitioner was sleeping. *Id.* Scudella also heard C.A. state where she hid the gun. (Dkt. 9-12, pg. 7-8.) He then entered the barbershop through the broken window and retrieved the gun from the location where C. A. said she hid it. *Id.*

Clearly an emergency existed for officers to obtain access to the barbershop, in which C.A. was locked with the person who sexually assaulted her at gunpoint. Although Petitioner contends the exigent circumstances ceased to exist when he exited the barbershop and was taken into custody, officers learned from C.A. that a loaded gun had been used during the assaults, that the gun was still in the barbershop in a specific location, and that bullets to the gun, which Petitioner

earlier had unloaded, may also be in the shop. Objectively considering the information known to Scudella and "balance[ing] the privacy-related and law enforcement-related concerns," *McArthur*, 531 U.S. at 331, his "extremely modest intrusion" to retrieve the gun and its bullets "was amply tailored to the exigency he faced" *Croak*, No. 16-6670, 2017 WL 2125758, at *9. Petitioner cannot establish a Fourth Amendment violation with the retrieval of the gun.[4] Claim 7(c) is thus denied.

### (c) Claim 7(d)—appellate counsel's alleged ineffectiveness for not arguing trial counsel's failure to object to the trial court's noncompliance with Ill. S. Ct. Rule 431

Claim 7(d) asserts that Petitioner's appellate attorney was ineffective for not arguing ineffective assistance by trial counsel "for failing to object [to] the trial court's failure to comply with [Ill.] S. Ct. Rule 431(b)." (Dkt. 1, pg. 5.)[5] The state post-conviction trial court's denial of this claim was neither contrary to, nor an unreasonable application, of clearly established federal law.

The state court rejected Petitioner's contention that, had his trial attorney objected to the insufficient Rule 431 admonishments, he would have succeeded on appeal because the claim would have been reviewed for harmless error. (Dkt. 9-12, pg. 9-10.) Relying on the state appellate court's description of the facts on direct appeal (the same facts quoted at the beginning of this opinion), the post-conviction trial court held: "it is conclusive that the evidence of guilt was

---

[4] The inevitable discovery doctrine, which applies where a "a warrant would certainly, and not merely probably, have been issued had it been applied for," also would have allowed for the admission of the gun. *See United States v. Are*, 590 F.3d 499, 507 (7th Cir. 2009). Here, C.A.'s statements that she hid the firearm the Petitioner used to rape her in the barbershop established probable cause to search for and seize the firearm. Had officers sought a warrant, as in *Are*, it is "virtually certain" that a warrant would have issued. *Id.* (applying the inevitable discovery doctrine based on a defendant's statement to law enforcement officers that the defendant had an AK-47 assault rifle in his home).

[5] Under Ill. S. Ct. Rule 431(b), a trial "court shall ask each potential juror, individually or in a group, whether that juror understands and accepts the following principles: (1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that the defendant's failure to testify cannot be held against him or her." *People v. Luciano*, 2013 IL App (2d) 110113-U, ¶ 3; *see also* Ill. S. Ct. R. 431(b). Rule 431(b), however, addresses only an Illinois right, not a federal one. "There is 'no federal right to have potential jurors questioned in the manner set out in Illinois Supreme Court Rule 431(b).'" *Clemons v. Roberson*, No. 19 C 06561, 2022 WL 3586165, at *2 (N.D. Ill. Aug. 22, 2022).

sufficient and petitioner would have been unable to succeed on appeal under harmless-error analysis." *Id.* at 11-12. Whether harmless-error review would have applied on direct appeal and, more importantly, whether Petitioner could have satisfied Illinois' harmless-error analysis for a preserved Rule 431(b) error are issues of state law. As previously observed several times in this opinion, a federal habeas court "cannot disagree with a state court's resolution of an issue of state law." *Miller*, 820 F.3d at 277 (citing *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus").

Given the state post-conviction court's determination that Petitioner could not succeed under Illinois' harmless-error review on direct appeal, Petitioner cannot demonstrate that his appellate attorney was ineffective for failing to argue ineffective assistance by trial counsel for not raising a Rule 431(b) objection. *Lopez*, 594 F.3d at 587 (a federal habeas court cannot "fault counsel as ineffective for failing to advance a position under state law that the state … court said was meritless"). Claim 7(d) thus warrants no federal habeas relief and is denied.

### (4) Claim 2(b)—whether consideration of the gun for Petitioner's aggravated sexual assault convictions and his sentencing enhancements was a double-jeopardy violation

Lastly, the Court returns to Petitioner's § 2254 Claim 2(b) to address its merits to the extent the claim asserts a federal constitutional claim. Petitioner argues that Illinois' 15-year enhancement for use of a firearm during a crime is "unconstitutional in violation of the double jeopardy clause where the offense is aggravated to a Class X offense based on the firearm, and an additional 15 years is added to the Class X sentence based on the same firearm." (Dkt. 1, pg. 5.) This claim is without merit.

As previously discussed, the third protection of the Constitution's Double Jeopardy Clause protects a defendant "against 'multiple punishments for the same offense' imposed in a single proceeding." *McCloud v. Deppisch*, 409 F.3d 869, 873 (7th Cir. 2005) (quoting *Jones v. Thomas*, 491 U.S. 376, 381 (1989)). This protection "prohibits the judicial branch from imposing multiple punishments in situations in which the legislature did not intend them." *United States v. Handford*, 39 F.3d 731, 735 (7th Cir. 1994); *Jones*, 491 U.S. at 381 ("The purpose is to ensure that sentencing courts do not exceed, by the device of multiple punishments, the limits prescribed by the legislative branch …, in which lies the substantive power to define crimes and prescribe punishments.").

The Illinois legislature, as Illinois courts have determined and as indicated by the language of the statute itself, intended the use of a gun during a sexual assault not only to elevate the offense to an aggravated level, but also to result in a mandatory sentencing enhancement of 15 years' imprisonment. *See Hampton*, 842 N.E.2d at 1134-35. According to the Illinois Appellate Court in Petitioner's first direct appeal, "the plain language of the statute" states that "the enhancement is mandatory as '[a] violation of subsection (a)(8) is a Class X felony for which 15 years shall be added to the term of imprisonment imposed by the court.'" *Castleberry*, 2013 IL App (1st) 111791-U, ¶ 37 (quoting 720 ILCS 5/12–14(d)(1)); *see also Bradshaw*, 546 U.S. at 76 ("a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus"). No double-jeopardy violation occurred as Petitioner was not sentenced in a way "the legislature did not intend." *Handford*, 39 F.3d at 735; *see also Jones*, 491 U.S. at 381. Federal habeas relief is unavailable for Claim 2(b).

For all the above stated reasons, Petitioner's claims do not warrant § 2254 relief. His habeas corpus petition is thus denied.

D.       **Notice of Appeal Rights and Certificate of Appealability**

The denial of Petitioner's petition is a final decision ending this case. If he seeks to appeal, he must file a notice of appeal in this Court within 30 days from when judgment is entered. Fed. R. App. P. 4(a)(1). He need not bring a motion to reconsider this decision to preserve his appellate right, but if he wishes the Court to reconsider its judgment, he may file a motion under Fed. R. Civ. P. 59(e) or 60(b). A Rule 59(e) motion must be filed within 28 days of entry of judgment and suspends the deadline for filing an appeal until the motion is ruled on. *See* Fed. R. Civ. P. 59(e) and Fed. R. App. P. 4(a)(4)(A)(iv). A Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). A Rule 60(b) motion suspends the deadline for filing an appeal until the motion is ruled on only if the motion is filed within 28 days of the judgment. Fed. R. App. P. 4(a)(4)(A)(vi). The time to file a Rule 59(e) or 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2).

The Court declines to issue a certificate of appealability. *See* Rule 11 of the Rules Governing § 2254 Cases. Petitioner cannot make a substantial showing of the denial of a constitutional right or that reasonable jurists would debate, much less disagree, with this Court's resolution of his claims. *Arredondo v. Huibregtse*, 542 F.3d 1155, 1165 (7th Cir. 2008) (citing 28 U.S.C. § 2253(c)(2)); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

### III. CONCLUSION

For the reasons explained above, this Court denies Petitioner's habeas corpus petition [1]. All pending motions are denied as moot. The Court declines to issue a certificate of appealability. The Clerk is directed to: (1) terminate Justin Wilks, former warden of Dixon Correctional Center, as Respondent; (2) add Tarry Williams, Dixon's current warden, as Respondent; (3) change the

case caption to *Castleberry v. Williams*; and (4) enter judgment in favor of Respondent and against Petitioner. Civil case terminated.

Date: 10/2/2023 Entered:

_____
Jeremy C. Daniel
United States District Judge